DANNER, et al. *v.* MID-STATE PAVING COMPANY, et al.

No. 43463 April 12, 1965 173 So. 2d 608

*Williamson, Pigford & Hendricks,* Meridian; *J. M. Morse, III,* University, Mississippi, for appellant.

*Ethridge, Minniece, Bourdeaux & Jones,* Meridian, for appellees.

BRADY, TOM P., J.

The appellants here are the next of kin and beneficiaries under the Mississippi wrongful death statute, and consist of the wife and daughters of George G. Danner, who lost his life on December 11, 1962 at approximately 2:30 P. M. when a 1950 model Plymouth sedan, being operated in a westerly direction on 8th Street in the city of Meridian, collided with a 1957 model Chevrolet truck owned by the appellee corporation

and being operated by its employee, the appellee Edward E. Trussell, a Negro, in an easterly direction on said 8th Street in or near a school zone where the regulated speed was not to be in excess of fifteen miles per hour.

The declaration was filed on February 1, 1963 in the Circuit Court of Lauderdale County. The trial was held on June 14, 1963, resulting in a jury verdict for the appellants in the sum of $25,000. Appellees' motion for a new trial was sustained by the trial court and an order entered on June 19, 1963 because of improper statements made by the appellants' attorney to the jury in his summation. The record discloses, however, other errors which were committed in this trial which could have required the lower court to have granted a new trial upon proper motion therefor.

A second trial was held at the January, 1964 Term of Court, which resulted in a mistrial because the jury was unable to agree upon a verdict.

At the April, 1964 Term of Circuit Court a third trial was held, which resulted in a jury verdict for the appellees. Appellants' motion for a new trial was made and was overruled on May 2, 1964. From the judgment, the overruling of the motion for a new trial, and the errors assigned in the third trial, this appeal is prosecuted.

The appellants assigned as errors on their appeal, the following:

I. The Court below erred in sustaining a Motion for a New Trial and setting aside the jury verdict and judgment in the first trial of this cause and thereby erred in trying the case the second and third time.

II. The Court below erred in holding that argument of Counsel constituted fatal error and was such that it could not be erased other than by the granting of a new trial.

III. The Court below erred in granting the Instructions requested by the defendants in the third trial.

Insofar as the first two errors are concerned, this Court feels that they are controlled by the rules of law as set forth in the following cases: Long v. Magnolia Hotel Co., 236 Miss. 655, 111 So. 2d 645 (1959); Harper v. State Highway Comm'n, 216 Miss. 321, 62 So. 2d 375 (1953); Smith v. Walsh, 63 Miss. 584 (1886); S. & F. Dorr & Co. v. Watson and Woodhouse, 28 Miss. 383 (1854).

It was pointed out in the Long case in 236 Miss. at 666, 111 So. 2d at 649-50, where this Court quoted from the Smith v. Walsh case, as follows:

We are unwilling to disturb the judgment of the lower court in granting a new trial upon the first verdict. The rule that the action of the trial court upon a motion for a new trial is to be favorably considered upon appeal, and supported unless manifest error appears, and is particularly applicable where the new trial has been granted, since in such cases the rights of the parties are not finally settled, as they are where a new trial is refused, but another trial is had. Dorr v. Watson, 28 Miss. 383.

Furthermore, in the Long case in 236 Miss. at 667, 111 So. 2d at 650, we quoted from the case of Harper v. State Highway Commission, as follows:

Section 1536, Code of 1942, recognizes the right of a trial court to grant as many as two new trials if the facts and circumstances are such as to warrant the court in doing so. And the action of a trial court in setting aside a verdict and granting a new trial will not be disturbed unless there is a manifest abuse of his discretion in so doing.

Therefore the issue, insofar as the first two errors are concerned, turns upon whether or not the argument of counsel representing the appellants constituted fatal error and was such that it could not be erased other

than by the granting of a new trial. We can say that the argument made by counsel for the appellants, urging the jury to adopt the Golden Rule in reaching their verdict, did constitute fatal error, and the effort on the part of appellants' attorney to correct the error subsequent to the time the court overruled the appellees' motion for a mistrial failed to do so.

It is conceded by the appellants in their brief that the sole major issue presented for decision to this Court by the sustaining of the lower court of the appellees' motion for a new trial is whether or not the statements of appellants' counsel, taken as a whole, constitute such prejudicial and fatal error as to warrant the setting aside of the verdict of the jury and allowing the case to be retried. In sustaining the appellees' motion for a new trial, the circuit court stated:

. . . the court finds that errors prejudicial to the rights of the defendants were committed by the closing argument made by one of counsel for the plaintiffs to the jury requesting the jury to apply the "Golden Rule" and that the court should have sustained the objection of the defendants to such argument.

The court, therefore, further finds that the jury verdict and the judgment entered thereon should not be allowed to stand, but that said verdict and judgment set aside and a new trial granted as to all issues.

Turning to the so-called Golden Rule, which is found in the scriptures at Matthew 7:12, Luke 6:31, courts of this country have uniformly held that human beings are unreliable judges of their own affairs; that it is expecting too much of a man to weigh his own case fairly and impartially, since most humans want their own cases to be decided in their favor. It follows, therefore, to advise jurors to decide a case as they would want it decided if they or their loved ones were the litigants is to establish a false standard for the basis of judgments. The actual words complained of by the

appellees, which appellants' counsel stated to the jury in his summation, were: "I want you to treat Mrs. Danner and her children as you would want your wife and children treated if this would happen to you. Follow the Golden Rule. Do unto others as you would have them do unto you."

The record discloses that objection was promptly made and the trial court was requested to admonish counsel not to so charge the jury and asked that the court instruct the jury to disregard the statement of appellants' counsel. The appellees therefore did all that could be done at that point in the trial to correct the error which had been made. Appellees objected to the argument of counsel representing appellants and requested the court to instruct the jury to disregard it. This the trial judge declined to do, and overruled the motion. Approval was thereby placed upon the statement which appellants' counsel had made with reference to the Golden Rule. Evidently realizing the error which had been committed, counsel representing the appellants then attempted to rectify the wrong by asking the jury to place them in the shoes of the corporation. This effort emphasized the fact that a corporation was one of the appellees but, in our opinion, did not rectify the error which had been committed.

■■ ■ Subsequent arguments or statements made in the summation by the attorney representing the appellants likewise failed to sufficiently instruct the jury that they were not only at liberty to do so but that they should completely disregard the Golden Rule statement which he had made. It is impossible to say whether the error committed by counsel representing the appellants, or the error committed by the court in condoning or justifying the error committed by appellants, had the most influence upon the jury. We agree with the contention of the appellees that the instructions granted to the appellants and the appellees did not correct or

rectify the impact of the Golden Rule argument which had been made by counsel for the appellants and approved by the court. While the instructions to the jury are of the utmost importance, nevertheless it is also a fundamental truth, and is well recognized, that the juries pay far more attention to the summation of counsel at the conclusion of a case, and the arguments which are made to them, than they do to the instructions which are given them in writing for their consideration in their chambers. Any erroneous statement which is made to the jury in the summation of a case should be corrected in the summation of the case before the jury, not only by the person committing the error, but also by the court, and the courts are more and more tending to poll the jury when a motion for a mistrial is made because of such an error, to determine whether or not the jury not only can, but will, completely disregard the erroneous statement calculated to influence their motions and overthrow their judgment with reference to the application of the law as it applies to the facts.

In Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 338-9, 153 So. 2d 689 (1963), we stated as follows:

Appellant complains of argument made by appellee's attorney to the jury. He told the jury that in deciding the amount of damages, the jurors should put themselves in the shoes of the plaintiff and should do unto the plaintiff as they would want him to do unto them, and mentioned going according to the Golden Rule in this matter. Defendants objected and the court stated that technically the argument was not stating the correct test, but that the court felt the jurors were honorable and reasonable men and would take such argument in the proper way. The objection was not sustained and it was not necessary for defendants to move for a mistrial. Apparently this Court has not passed upon the Golden Rule argument. Attorneys have always been allowed considerable latitude in

arguing to the jury so long as the argument does not exceed proper bounds. It is the essence of our system of courts and laws that every party is entitled to a fair and impartial jury. It is a fundamental tenet of our system that a man may not judge his own case, for experience teaches that men are usually not impartial and fair when self-interest is involved. Therefore, it is improper to permit an attorney to tell the jury to put themselves in the shoes of one of the parties or to apply the Golden Rule. Attorneys should not tell the jury, in effect, that the law authorizes it to depart from neutrality and to make its determination from the point of view of bias or personal interest. *We hold it was error not to sustain the objection.* Bullock v. Branch, (Fla. App.) 130 So. 2d 74; Brant v. Wabash R.R. Co., 31 Ill. App. 2d 337, 176 N. E. 2d 13; Dunlap v. Lee, 257 N. C. 447, 126 S. E. 2d 62; Greer v. Union Railway Co., 53 Misc. 639, 103 N. Y. Supp. 88; Rhodes v. Union Railway Co., 52 Misc. 501, 102 N. Y. Supp. 510; Russell v. Chicago, Rock Island & Pacific Railroad Co., 249 Iowa 664, 86 N. W. 2d 843, 70 A. L. R. 2d 927; 53 Am. Jur., Trial, Sec. 496, p. 401; 88 C. J. S., Trial, Sec. 191, p. 376; 70 A. L. R. 2d 937. (Emphasis added.)

It is obvious, therefore, that we severely criticized the making of the Golden Rule argument in the case of Copiah Dairies, Inc. v. Addkison. There were instructions granted in that case which authorized the granting of a new trial; however, our criticism of the Golden Rule argument was certainly clear and positive so as to indicate that we considered the making of the Golden Rule summation appeal in the case to be reversible error. If it was not reversible error we would not have taken the time nor space to point out to the litigants and the Bar of Mississippi that we condemned the use of the Golden Rule standard by the jury in reaching a decision.

The majority rule in this country condemns the use of the Golden Rule standard in a summation to the jury as a basis for determining the rights of litigants.

In 70 A. L. R. 2d 937 will be found a study of the Golden Rule standard. See also H. L. Butler & Son v. Walpole, 239 S. W. 2d 653 (Tex. Civ. App. 1951); Fambrough v. Wagley, 140 Tex. Rep. 577, 169 S. W. 2d 478 (1943).

The granting of instructions requested by the appellees directing the jury not to base their verdict upon sympathy can scarcely be said to erase the impact of the Golden Rule appeal made orally by appellants' counsel. At any rate, the instruction granted the appellees was in hopeless conflict with the court's overruling the motion of the appellees and the court's failure to instruct the jury to disregard the Golden Rule standard urged by appellants' counsel.

We cannot say that the trial court's act in sustaining the motion for a new trial was unsupported by sufficient facts as presented in the bill of exceptions. No manifest error appears and for this reason, and for the further reason that the rights of the parties were not finally settled by the granting of the new trial, we hold that the trial court did not commit error in sustaining appellees' motion for a new trial.

The language in H. L. Butler & Son v. Walpole, *supra*, cited by the appellants, is not authority for their position because, in that case, objection to the argument made by opposing counsel was sustained by the trial court. No request was made for an instruction to the jury to disregard this argument, and in that case the appellants contended that the trial court erred in failing on its own motion to instruct the jury to disregard the argument. In that case the language complained of was as follows: "Remember gentlemen you yourselves may sometime be sitting as a litigant and when you consider your verdict, remember the Golden Rule." 239

S. W. 2d at 657. The Texas Supreme Court held:

The defendants did not move for a mistrial, and all that they requested was granted by the court. We do not believe that the argument was improper; it did not ask the jury to take the place of the plaintiff or the defendants, but was an appeal to the jury to deal fairly with both plaintiff and the defendants.

The sustaining of the objection by the Texas court also clearly shows the court's disapproval of the statement made by counsel relating to the Golden Rule standard.

In Fambrough v. Wagley, *supra,* the language complained of was, "when you return your verdict, we ask you to do so as you would have it done if Mr. Fambrough occupied the places that you occupy and you were on the outside, out here in the place that Mr. Fambrough occupies." 169 S. W. 2d at 480. The Supreme Court of Texas held that the argument, and the trial court's failure to sustain objection to it, was reversible error.

Appellants finally urge the case of Airline Motor Coaches v. Green, 217 S. W. 2d 70 (Tex. Civ. App. 1949), as authority for the hypothesis that the making of the Golden Rule argument in the case at bar does not constitute reversible error. In the Airline Motor Coaches case the argument complained of did not ask the jury to put themselves in the places of any litigants, but simply to find the facts. In that case the trial court's granting of a new trial was predicated upon the court's failure to sustain objection to the Golden Rule argument, even though there were other good reasons for granting a new trial.

Appellees contend that even though the Golden Rule argument did not constitute error in the case at bar, still there were other errors committed which would have required a reversal on appeal to this Court. It is unnecessary for us to consider these errors, one of which related to an instruction granted to the appellants with

reference to a violation by appellees of the fifteen mile per hour speed limit in the school zone. The failure of the lower court to sustain the motion of the appellees to instruct the jury to disregard the appellants' supplication to the jury to apply the Golden Rule formula is sufficient.

While we did not, in words of one syllable, categorically state in the Copiah Dairies case that the urging of the Golden Rule standard was reversible error, it was clearly indicated that we condemned soundly the use of it and we now assert that it does constitute reversible error.

Turning to the third error assigned by the appellant, we now consider the instructions given to the appellees which appellants urge were erroneous in the third trial of this case. These are instructions 5, 1, 12 and 13, stated in the order in which these instructions were treated by the appellants in their brief. Instruction No. 5 is as follows:

> The court instructs the jury for the defendants that the driver Trussell was not guilty of negligence in failing to turn to his right to avoid the collision unless you believe from a preponderance of the evidence in this case that turning to the right was the only thing that a reasonable and prudent man would have done under the circumstances then existing.

The appellant contends that the vice in this instruction is that, although the jury might have believed that a reasonable, prudent man would have turned to the right, they might also have believed that a reasonable, prudent man might have turned to the left, or that a reasonable, prudent man might have applied his brakes when he first saw the appellants' decedent's car in the wrong lane coming toward him, or that he might have done something else. Appellants contend that this instruction limits the jury to deciding yes or no to the question:

Was turning to the right the only thing that a reasonable and prudent man could have done?

We fail to follow the logic of appellants' reasoning because the instruction as granted does not state, as is implied by the appellants, that the defendant's failure to turn to the right was the sole alternative open to Trussell; it does not exclude any other acts which a reasonable, prudent person would have done under the circumstances, and the instruction does not exclude the performance of any other acts which a reasonable, prudent person should have done in the exercise of reasonable care to avoid the collision. The instruction, as we construe it, does not imply, as appellants urge, that if the driver of the truck was not guilty of negligence in failing to turn to the right, then he was not guilty of any negligence. This instruction merely controverts if the jury believed from all the facts the allegation in the appellants' declaration stating that one of the three grounds of negligence charged to the appellee Trussell was the failure to turn the truck to the right; this being charged in the declaration, the appellees were entitled to an instruction to negative the charge in the declaration that Trussell, if the jury believed that Trussell could not have turned to the right under the circumstances, was not guilty of negligence in not doing so unless that was the only thing that a reasonable and prudent man would have done under the circumstances. Contrary to appellants' argument, it seems to us that this instruction leaves free for consideration by the jury, upon other proper instructions, the question of whether or not the brakes should have been applied sooner, whether or not Trussell should have turned to the left, whether or not Trussell should have stopped his truck completely, whether or not Trussell relied too long upon the proper assumption that Danner would turn back into his lane of traffic, if the jury believed that he had left the same.

 ██ ██ This instruction does not say that turning to the right was the only thing that a reasonable and prudent man would have done, nor does it imply that. It merely negatives the assertion in the appellants' declaration that Trussell, as a reasonable and prudent man, should have turned to the right under the circumstances. A reasonable, prudent man does not have to exercise only one method or means whereby an accident can be avoided if there be other means which would avoid the accident. It is for the jury to say whether or not he exercised reasonable care and caution, under all the circumstances, and chose the reasonable means as a prudent driver to avoid the accident after the danger was apparent.

Appellants contend that instruction No. 1 is erroneous in that it tells the jury that the decedent, Danner, was guilty of negligence, and fails to tell the jury in what respect he was guilty of negligence or the manner in which he was guilty of negligence, so that they might connect any such negligence with the proximate cause. Instruction No. 1 is as follows:

The court instructs the jury that the proof in this case shows that the decedent, Mr. Danner, was guilty of negligence. If you believe such negligence proximately contributed to the accident in question, and you further believe from a preponderance of the evidence that the defendants' truck driver was guilty of negligence also proximately contributing to the accident in question, it is your sworn duty to reduce any damages you may believe from the greater weight of the evidence that the plaintiffs have suffered as the result of the death of Mr. Danner in such proportion as you may believe Mr. Danner's negligence contributed to the accident in question.

Appellants do not exclusively and explicitly charge that the trial court erred in peremptorily instructing the jury that Danner was negligent, but inferentially

concludes that the granting of this instruction was error because it did not embody within it the specific grounds of negligence upon which the jury could base its verdict.

■■ Conceding that appellants do charge expressly that the granting of instruction No. 1 was error because it stated that the appellants' deceased was guilty of contributory negligence, we hold nevertheless that it was not error. The record conclusively shows that it is uncontroverted by any testimony that the car driven by Danner in a westerly direction, when three to four hundred feet from point of impact, left the north lane and crossed over the median of 8th Street and unlawfully proceeded westward in the south lane, which was for lawful use only by eastbound traffic, and continued westward in the wrong lane of traffic up to the point of collision. It is undisputed that after passing the intersection of 42nd Avenue that appellants' deceased was in Trussell's proper lane (eastbound) of travel and to Trussell's right. The negligent speed, route, manner of operation and the position of the car of appellants' deceased immediately before the collision conclusively established contributory negligence on the deceased's part. The trial court therefore did not commit error in instructing the jury that the appellants' deceased was guilty of contributory negligence.

■■ We have pointed out many times that it is not necessary or essential for a litigant to embody in one instruction all of the elements of negligence or the grounds upon which to predicate a recovery or to escape liability. Without instruction No. 12 merit could be attributed to appellants' contention that it was error to grant instruction No. 1, since it did fail to point out the elements of negligence, but instruction No. 12 granted the appellees does point out specifically the grounds of contributory negligence of which appellees contend the appellants' deceased was guilty. Instruction No. 12 is as follows:

The court instructs the jury for the defendants that as a matter of law Mr. Danner was guilty of negligence by operating his automobile just before and at the time of the accident in a westerly direction in the south lane of 8th Street. The court further instructs you that if you believe from the evidence in this case that such negligence on the part of Mr. Danner was the sole proximate cause of the accident complained of, then it shall be your sworn duty to return a verdict for the defendants.

The gravamen of the complaint of appellants with reference to instruction No. 12 is that it is repetitious and therefore tended to comment upon the weight of the evidence. We find no merit in this objection, but do point out that instruction No. 12 does explicitly define and explain the elements of negligence which appellees claim the appellants' deceased had committed, thus complementing instruction No. 1.

■■■ Appellants fatuously contend that the testimony of Mrs. Waddell created an issue of fact for determination by the jury, as to the contributory negligence of appellants' deceased. This is without merit because Mrs. Waddell never saw the deceased's car until the moment of the collision. On cross-examination she testified:

Q. You were there looking at it? Now, how fast was that Danner car going?
A. I didn't see the Danner car.
Q. You never saw it?
A. I didn't say I didn't see the accident. I saw it when the accident happened.
Q. Did you see it on 8th Street out there just before it happened?
A. No, sir.

The testimony of Mrs. Waddell was notably inconsistent, and had irreconcilable conflicts which were not resolved. It related largely to the alleged contributory

negligence of the appellee Trussell. It was principally upon this doubtful testimony that appellants sought to establish the appellee Trussell's negligent operation of the truck.

Although appellants urged to the contrary, we fail to see wherein instructions Nos. 12 and 13 granted to the appellees violate the well-known rule of law as set forth in Aycock v. Burnett, 157 Miss. 510, 128 So. 100 (1930). Instruction No. 13 is as follows:

The court instructs the jury for the defendants that a motorist may rely on the assumption that the driver of a vehicle approaching him on the wrong side of the road will not continue on the wrong side, but will avoid the danger created thereby until he sees, or in the exercise of due care should see, that the driver of the approaching vehicle will not do so.

The court, therefore, further instructs you in this case that the defendant Trussell had a right to assume that Mr. Danner, even though he was approaching the asphalt truck on the wrong side of the road, would avoid the danger created thereby by returning to his proper side or by turning off of 8th Street entirely and that Trussell was entitled under the law to continue on under this assumption until he saw or should have seen by the exercise of due care that the Danner vehicle was going to continue on the wrong side of the roadway.

Appellants' contention that, although appellants' deceased may have been on the wrong side of the road, these instructions were erroneous because they failed to take into consideration that the appellants' deceased may have been on the wrong side of the road because of the appellee Trussell's negligence, and therefore it was wrong for the court to instruct the jury that appellants' deceased was guilty of contributory negligence as a matter of law. Appellants rely upon the testimony of Mrs.

Waddell to establish negligence on the part of appellees and quote only a portion therefrom, which is as follows:

. . . this asphalt truck passed me, and it was going about thirty-five to forty miles an hour, I will say, and it was wobbling over that center line and back over it, and I was on the inside lane and he passed me, and then another car was right behind him. And when the accident occurred, well, he was down there just past the Triangle Tourist Court, in that school zone. . . .

Appellants interpret this to mean that three car lengths before the wreck occurred, Trussell had passed her wobbling over the center line while she was on the inside lane. The record discloses that Trussell passed Mrs. Waddell at a considerable distance from the place of the wreck, and certainly a great deal further away than three car lengths.

Mrs. Waddell's full statement is as follows:

Q. Would you tell the jury in your own words what you saw happen and where you were when you saw it?

A. Well, I was coming from out at my grandfather's. He lives out on old Highway 80. And I was there by Hinton's Service Station when this asphalt truck passed me, and it was going about thirty-five to forty miles an hour, I will say, and it was wobbling over that center line and back over it, . . .

■■ ■ It appears, therefore, that the time in which the asphalt truck passed Mrs. Waddell, traveling at thirty-five to forty miles per hour, and when she said it was wobbling over the center line and back over it, was when she was at Hinton's Service Station, some distance away, and not three car lengths behind the truck, at the time of the collision. This specific testimony, therefore, offered by Mrs. Waddell is not in conflict with the testimony offered by Sargeant Hearn and the Negro driver Trussell, who placed the truck in its

right lane of travel, or south lane, when Danner's car was three hundred to four hundred feet away and immediately before and at the time of the collision. Sergeant Hearn testified that the Danner car moved into the south lane of 8th Street about seventy-five yards from the point of the impact, and we could find no testimony in the record which disclosed that the truck driven by Trussell was not at that time in the south lane of traffic on 8th Street, where it was required to be. The undisputed evidence shows that Danner moved into the wrong lane when he was east of 42nd Avenue and when the vehicles were over two hundred feet apart, and that the appellee Trussell was not responsible in the least for Danner's wrongful act. The record shows that Danner's car was in the wrong lane before Trussell's truck passed Mrs. Waddell's car.

 █ Reviewing all of the instructions as a whole, and taking into consideration also instruction No. 10, which relates to the sudden emergency and was urged in the motion for a new trial, but which was not considered by the appellants in their brief and therefore actually not for review here, we feel that taking the instructions as a whole the jury was properly instructed as to the elements of negligence and the controlling legal principles with reference to this collision. There was a fair and accurate statement of the rules of law presented to the jury when the instructions granted to both the appellants and the appellees are considered together. Phillips v. The Dow Chemical Co., 247 Miss. 293, 151 So. 2d 199 (1963); Mitchell-Davis Distrib. Co. v. McDonald, 223 Miss. 573, 78 So. 2d 597 (1955); Clisby v. Mobile & O. R. R., 78 Miss. 937, 29 So. 913 (1901).

 ██ While the instructions could be more letter perfect, we fail to find that the errors of which appellants complain are of such a nature as would tend to mislead the jury as to the real issues upon which they had to pass. This being so, we cannot reverse

the case because of the instructions which were granted the appellees in this cause. Johnson v. Richardson, 234 Miss. 849, 108 So. 2d 194 (1959); Scoggins v. Vicksburg Hospital, Inc., 229 Miss. 770, 91 So. 2d 837 (1957).

The grievous, relentless slaughter of human lives continues to take place on the highways of this state and nation. Our sympathies are aroused, of course, for those loved ones who are left behind. However, a careful review of the facts in this case and a study of the pertinent authorities lead us to the inescapable conclusion that no errors in the trial of this case, specifically including the granting of the instructions, have been committed for which it should be reversed.

 ██ The physical facts, the undisputed testimony of disinterested witnesses, and the overwhelming weight of the evidence convince us that the jury was amply correct in finding for the appellees. Therefore, the judgment of the lower court is hereby affirmed.

Affirmed.

*Lee, C. J., and Gillespie, Rodgers and Jones, JJ.,* concur.